## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MATTHEW BUITRON and DONALD BUTLER,<br><br>on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>GOTO FOODS HOLDINGS INC., GOTO FOODS LLC (f/k/a FOCUS BRANDS LLC), and MCALISTER'S FRANCHISOR SPV LLC;<br><br>          Defendants. | Case No.: _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT - CLASS ACTION

COME NOW, Plaintiffs, Matthew Buitron and Donald Butler ("Plaintiffs"), individually and on behalf of all others similarly situated as defined herein, by and through their attorneys, and hereby file this Class Action Complaint against Defendants GoTo Foods Holdings, Inc., GoTo Foods LLC (f/k/a Focus Brands LLC) (collectively, "GoTo"), and McAlister's Franchisor SPV LLC ("McAlister's") (collectively, "Defendants"). In support thereof, Plaintiffs state the following:

## NATURE OF ACTION

1.      This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendants arising from their deceptive

and untruthful pricing practices perpetrated on customers consummating website or app-based food orders and/or food orders for delivery.

2.     Throughout their stores, and like all restaurants, GoTo Brands[1], including McAlister's, provide prominent price displays for each of its menu items.  Reasonable consumers like Plaintiffs understand those are the true and complete prices for the menu items, exclusive of government-imposed taxes and discounts for which a customer may be eligible.

3.     To appeal to consumers in a crowded food marketplace, Defendants have promised their customers food items at appealing menu prices on their websites, apps, and in-store.  Those prices are not the true cost of food at GoTo Brands for consumers who place digital orders.  Defendants add to every order placed through app or website a "Service Fee" amounting to three percent (3%) of the subtotal.

4.     *After* consumers placing a digital order select menu items based on listed prices and customize those menu items with specifications, and *after* the ordering process is complete, Defendants surreptitiously impose the "Service Fee".  This late addition of a so-called "Service Fee" substantially changes the menu prices for food items ordered by digital order and disguises the true cost of those items.

---

[1] Auntie Anne's, Carvel, Cinnabon, Jamba Juice, McAlister's Deli, Moe's Southwest Grill, and Schlotsky's Deli.

5.     The "Service Fee" is not reasonably disclosed to customers during the digital ordering process.   Defendants' digital order protocol and procedure is completely automated by computer, and the customer placing a digital order does not speak with an actual employee or representative of Defendants. At no time during this automated digital procedure is the "Service Fee" reasonably disclosed to the customer.

6.     The "Service Fee" is not for any additional "service" related to the purchase of Defendants' food—it is part of the cost of food itself.   Digital orders require no additional service or labor by Defendants than an in-store order. In fact, as mentioned above, the digital ordering procedure is completely automated and does not involve an actual employee or representative of Defendants.

7.     When placing a digital order with GoTo Brands, consumers may elect to pick up the order in person ("pickup" orders) or may elect to have the order delivered ("delivery" orders) subject to an additional fee.

8.     In a deceptive line item called "Taxes and Fees", Defendants hide a "Convenience Fee" and a "Service Fee", obscuring its hidden charges from consumers during the ordering process.

9.     During the digital ordering process, a line-item charge of "Taxes and Fees" appears to the user.  Only if the user clicks on a small icon next to this line item, another box appears on the screen breaking down into line items sales tax,

"Service Fee," and "Convenience Fees".  By virtue of the practices described herein, Defendants dupes customers into needlessly paying the undisclosed and improper "Service Fees" and "Convenience Fees"

10.    Because the so-called "Service Fee" is added as a matter of course to *all* digital orders, the "Service Fee" is, by definition, part of the cost of the food offered.  Defendants obscure the true cost of their food by adding a "Service Fee" that is simply part of the cost of its food.

11.    The 3% Service Fee is not reflected in the prices listed on Defendants' menus on its mobile app/website.  This hidden upcharge makes all Defendants' menu prices on their apps/websites patently false.

12.    Defendants' double-edged price deception—first, touting menu prices that are false; second, surreptitiously adding the "Service Fee" —gives it an unfair advantage over honest sellers in the marketplace. This makes it impossible for consumers to comparison shop meaningfully and hinders the operation of a free and fair marketplace.

13.    Defendants obscure the true nature of the 3% fee by naming it a "Service Fee" and attempting to hide it from consumers.

14.    Defendants have prominently marketed flat-fee delivery (usually $3.99-$6.99) in their mobile applications and on their websites.

15.     Consumers like Plaintiff reasonably understand the express flat-fee delivery as the total additional cost they will pay as a result of having their food delivered, as opposed to receiving food from Defendants by another method.

16.     On Delivery orders only, Defendants add a hidden charge they call a "Convenience Fee" amounting to 10% more for the same food received by non-delivery customers.  In other words, the identical food item costs approximately 10% more when ordered for delivery than when ordered via the same website/mobile app for pickup.

17.     This hidden 10% delivery upcharge makes Defendants' flat fee delivery patently false.  The true delivery costs are obscured and far exceed the prominent flat fee.

18.     Defendants fail to disclose the true nature of the delivery charges assessed on their mobile applications and websites, by issuing in-app and online marketing materials that display flat-fee delivery costs.

19.     Specifically, Defendants omit and conceal material facts about their delivery service, failing to reasonably inform that use of the delivery service causes a 10% increase in food prices, displaying a flat delivery fee prominently while hiding the 10% delivery surcharge from the customer during the checkout process.

20.     By falsely marketing flat-fee delivery, Defendants deceive consumers into making website or mobile app food purchases they otherwise would not make.

21.    Defendants' second double-edged price deception—first, touting flat-fee delivery; second, surreptitiously adding the "Convenience Fee" —gives it an unfair advantage over honest sellers in the marketplace. This makes it impossible for consumers to comparison shop meaningfully and hinders the operation of a free and fair marketplace.

22.    By unfairly obscuring its true delivery costs and menu prices, Defendants deceive consumers and gain an unfair upper hand on competitors that fairly disclose their true delivery charges and menu prices. For example, McAlister's competitors such as Del Taco and El Pollo Loco both offer delivery services through their app/website.  But unlike McAlister's, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges and menu prices.

23.    Hundreds of thousands of Defendants' customers like Plaintiff have been assessed hidden charges they did not bargain for, pursuant to Defendants' uniform nationwide representations on their apps/websites.

24.    Plaintiffs seek damages and, among other remedies, injunctive relief that allows consumers to fairly decide whether they will pay Defendants' delivery and menu price mark-ups.

## PARTIES

25.    Plaintiff Donald Butler is an adult citizen of the state of Georgia who resides in Georgia and resided there at all times relevant to this Complaint.

26.    Plaintiff Matthew Buitron is a citizen of the state of Alabama who resides in Birmingham, Alabama and resided there at all times relevant to this Complaint.

27.    Defendant GoTo Foods Holdings Inc. ("GoTo") is a corporation organized under the state of Delaware with its principal place of business in Atlanta, Georgia.  GoTo Foods is the parent company of the restaurant brands Auntie Anne's, Carvel, Cinnabon, Jamba Juice, McAlister's Deli, Moe's Southwest Grill, and Schlotsky's Deli (GoTo's "Brands").  GoTo is engaged in nationwide operation and management of its Brands from Georgia and sets all material policies and practices of its Brands from Georgia, including the policies relating to the "Service Fee" and "Convenience Fee" challenged herein.  GoTo Foods is jointly and severally liable for all acts and omissions by all its Brands, including McAlister's, as alleged in this Complaint.

28.    Defendant MCALISTER'S FRANCHISOR SPV LLC is engaged in the business of providing food and delivery services to consumers, including Plaintiff Buitron, Plaintiff Butler, and members of the putative class.    Defendant MCALISTER'S FRANCHISOR SPV LLC is incorporated in Georgia and maintains its principal business offices in Atlanta, Georgia.

## JURISDICTION & VENUE

29.     This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because of the following: (1) the proposed class is comprised of at least 100 members; (2) at least one member of the proposed class a citizen of a different state than Defendants; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

30.     Venue is proper in the district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction here, maintain their corporate headquarters here, and regularly conduct business in this District.  Also, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this District.

## COMMON FACTUAL ALLEGATIONS

**A. Defendants Operate Nationwide from Georgia.**

31.     Defendants' principal place of business is in Atlanta, Georgia and the acts, practices, and omissions at issue in this matter were directed and emanated from its headquarters in Georgia.

32.     GoTo Foods is the parent company of the restaurant brands Auntie Anne's, Carvel, Cinnabon, Jamba Juice, McAlister's Deli ("McAlister's"), Moe's Southwest Grill, and Schlotsky's Deli (GoTo's "Brands").  GoTo Foods and its Brands are all headquartered in, and operate from, Atlanta.

33.     GoTo is engaged in nationwide management of its Brands located throughout the United States.  GoTo maintains authority and controls its Brands and their locations, including their business operations, pricing schemes, and all control over the design of the websites and apps of its restaurants, from Georgia.

34.     At all relevant times, all GoTo's Brands, including McAlister's, were operating as the alter-egos or agents of GoTo.

35.     GoTo's operations of its System – its Brands' digital ordering system - occur at its Georgia headquarters.  GoTo processes customer payments through the System in Georgia.  GoTo's corporate decisions relating to digital orders are and were made from its Atlanta headquarters.  GoTo's System and IT personnel operate out of and are in Atlanta, Georgia.

36.     The conduct giving rise to this action occurred in Georgia, where GoTo created and operated their GoTo ordering System's websites and apps, and where GoTo processed all customer payments for digital orders made through the GoTo System for all Brands.  GoTo authorized and conducted operations that caused the damages to the named and proposed class Plaintiffs from GoTo's Georgia headquarters.

37.     The named and proposed class Plaintiffs interacted with Georgia in a significant way in relation to the underlying claims, each necessarily using Defendants' System.

38.     Plaintiffs have standing to bring common law and statutory claims under Georgia law on behalf of a nationwide class because Plaintiffs and the absent class members have suffered the same injuries that are traceable to the violation of Georgia law.

39.     Georgia has a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests.  Georgia has a significant interest in regulating the conduct of businesses operating within its borders, particularly those whose principal place of business is in Georgia.

## B. Takeout Orders - Especially Delivery – Explode in 2020.

40.     The online and mobile app food delivery industry predominately influences the country's most financially vulnerable populations. A nationwide research study conducted by Zion showed disproportionate use by the young and the poor[2]. In the study, during a 90-day timeframe, 63% of consumers between the ages of 18 and 29 used a multi-restaurant delivery website or app service, followed by 51% of consumers between the ages of 30 to 44[3].  The study also demonstrated that the "less income a consumer earns, the more likely the consumer is to take advantage

---

[2] *See* Aric Zion and Thomas Hollman, Zion & Zion Research Study, *Usage and Demographics of Food Delivery Apps*.
[3] *Id.*

of restaurant delivery services," as those earning less than $10,000 per year ordered online delivery the most (51.6%)[4].

41.    In the wake of the 2020 food delivery surge, Consumer Reports highlighted the need for fee transparency for consumers who use these apps and services[5]. A research team investigated food delivery companies, and the report measured their compliance with new rules regarding fees enacted in seven US cities aimed at protecting consumers and businesses during the pandemic. It found that these companies continued to not comply with the new ordinances and continued to "employ design practices that obfuscate fees." It concluded that "[c]onsumers deserve to have informed choices to understand what they are being charged for and how their dollars spent impacts the restaurants they support and patronize in their communities."

## C. Defendants Initially Offered Online and App Orders with No Fees, Then Discovered Revenue and Sales Could Increase Using Hidden Fees.

42.    GoTo's Brands offered app and website ordering services prior to 2020, but the system was in its infancy and each Brand had its own ordering system.  At that time, Defendants offered a truthful and transparent ordering process without added fees.

---

[4] *Id.*
[5] See Consumer Reports, Collecting Receipts: Food Delivery Apps & Fee Transparency, September 29, 2020, accessible at https://digital-lab-wp.consumerreports.org/wpcontent/uploads/2020/09/Food-delivery_-Report.pdf, last accessed January 19, 2021.

43.    In February 2020, 13% of GoTo Brands' sales came from digital orders. By the end of 2021, sales from Digital orders rose to 28%.

44.    On January 4th, 2021, GoTo added a 35-cent surcharge to all Brands' digital orders.

45.    By 2022, the 35-cent surcharge rose to 3% of the subtotal on all digital orders.

46.    By 2023, GoTo added a further 10% surcharge to all delivery orders.

## D. Defendants' Digital Ordering System is Uniform Across Brands.

47.    By 2022, GoTo implemented an in-house unified digital platform (the "GoTo System") replicated across all seven chains, allowing changes to the entire system at once.[6]  GoTo's goal was to get GoTo's Digital sales to 40% within five years.[7]

48.    GoTo's (then Focus Brands) CEO Jim Holthouser stated of the uniformity in GoTo's System in May 2022: "When you're doing everything on a standalone basis, you're not taking advantage of economies of scale..."[8] "It's the

---

[6] *Focus Brands' New Digital Strategy Could Be a Game-Changer, May 16, 2022.*
https://www.qsrmagazine.com/exclusives/focus-brands-new-digital-strategy-could-be-game-changer/ (last accessed May 22, 2025).
[7] Id.
[8] Id.

same app, the same website, just replicated with different window dressing by brand."[9]

49.    Mr. Holthouser went on to state that when running a multi-brand corporation, five percent of decisions should be brand specific, but everything else has nothing to do with differentiation.[10]

50.    By 2022, GoTo consolidated all Brands' 14 million customers into one database.[11]

51.    GoTo's CFO noted in 2022 that just to get the ball rolling, the cost of building a website was close to $2 million, and that in subsequent years, brands typically spend nearly $500,000 to $1 million every year just to maintain it, which can pile up for a collection of mid-sized and smaller brands.[12]

52.    GoTo's Chief Technology Officer noted in 2022 that long-term, these technological innovations will require tens of millions of dollars and investment in human capital and that the costs would be paid for upfront by GoTo and by the 35-cent surcharge, and that future transactions would pay back costs.[13]

53.    The next year, GoTo added the 10% surcharge to all delivery orders.

---

[9] Id.
[10] Id.
[11] *Will Focus Brands Make the Next Big M&A Move? April 18, 2022.*,
https://www.qsrmagazine.com/exclusives/will-focus-brands-make-next-big-ma-move/ (last accessed May 22, 2025)
[12] Id.
[13] Id.

54.     GoTo's operation of its Brands, specifically regarding orders placed through the Brands' websites and apps, is uniform.  GoTo uniformly operates its Brands' websites and apps through the GoTo System.  GoTo was a direct participant in the dealings with the consumers placing orders through GoTo's System, including the named and proposed class Plaintiffs.

55.     All GoTo Brands utilize the GoTo System – the uniform digital ordering system as described herein.  The GoTo System saves each customer's information and order history.

56.     In February 2024, at GoTo's annual global conference, GoTo's CEO, Jim Holthouser announced GoTo's name change as the final step to becoming a "platform business"[14]:



_____

[14] **Focus Brands is Changing Its Name to GoTo Foods,** February 20, 2024,
https://www.restaurantbusinessonline.com/operations/focus-brands-changing-its-name-goto-foods (last accessed September 1, 2025)

57.    According to the Harvard Business School, "[a] platform business model leverages digital infrastructure to facilitate interactions between user groups. It generates value and revenue through transaction fees, advertising, and data monetization.  Platform businesses own the 'means of connection' by providing the technology, network, and tools to enable these interactions."[15]

58.    In a contemporaneous interview, Mr. Holthouser explained that when he joined in 2020, each brand operated as an independent company.  Each one, for example, previously had its own website and app, "But they weren't that effective. That's partly because all seven brands had to go out and figure out how to be digital experts."[16]  Since then, however, the company has been taking big steps to shift operations to one larger platform and the company's Digital platforms have been replicated across all the brands.[17]

59.    GoTo requires all its Brands restaurants to use the GoTo System for orders.

## E. Defendants Prominently and Plainly Display Menu Prices and Flat Fee Delivery on Apps and Websites.

60.    Menu prices are made via large signs and menus in stores and on the home page and all subsequent pages of Defendants' websites and apps.

---

[15] Traditional vs. Platform-Based Business Models: 4 Key Differences, https://online.hbs.edu/blog/post/platform-based-business-models (last accessed September 1, 2025)
[16] **Focus Brands is Changing Its Name to GoTo Foods,** February 20, 2024, https://www.restaurantbusinessonline.com/operations/focus-brands-changing-its-name-goto-foods (last accessed September 1, 2025)
[17] Id.

61.    The GoTo System websites and apps prominently feature food menu prices and promise flat-fee delivery.

62.    Reasonable customers like the named and proposed class Plaintiffs understand that the advertised prices are the true and complete prices for the products, exclusive of government-imposed taxes and discounts that a customer may be eligible for.

63.    As such, many consumers will simply grumble and pay, without ever even clicking the icon in Figure 1.   By hiding their Service Fee and Convenience Fee under the cloak of taxes, Defendants can unjustly enrich themselves by falsely making people believe they are paying taxes for the public good.  They are not.

64.    And consumers have little reason to ever even click the icon.  After all, on that same page Defendants prominently disclose that they charge a stout $4.99 - $6.99 "Delivery Charge" on all delivery orders.   This intentionally misleads consumers into believing that that is the only delivery fee being charged, when, in fact, there is a "Convenience Fee" hiding within the "Taxes and Fees" category.  In the example shown above, the "Convenience Fee" is more than the quoted "Delivery Fee."

65.    Such representations were made throughout Defendants' apps and websites, but were always made on the penultimate check-out screen of the app/website, prior to the finalization of an order.

66.    On that screen, Defendants tout a total cost of menu items in the Subtotal and a flat-fee "Delivery Charge" (usually $3.99-$6.99). As an example, a delivery order with a supposed "$3.99 Delivery Charge" shows on the order finalization screen:

| | |
|---|---|
| Subtotal | $47.21 |
| Delivery Charge | $3.99 |
| Taxes and Fees ⓘ | $9.54 |
| **Total** | **$60.74** |

**FIGURE 1**

67.    In short, it was impossible for the named and Proposed Class Plaintiffs to avoid seeing the flat-fee "Delivery Charge" and the line item "Taxes and Fees".

68.    This itemized "Delivery Charge" is a clear declaration that the total cost of having food delivered versus picking it up in-store was represented by the flat-fee Delivery Charge.

69.    The Subtotal in Figure 1 gives the reasonable perception that such amount is the total cost of the selected menu items. The Delivery Charge in Figure 1 gives the reasonable perception that such amount is what covers delivery costs.

70.    But the menu prices were not as advertised, and the cost of delivery was not, in fact, the stated flat-fee Delivery Charge.

**F. Defendants Omit and Conceal Material Facts in the Ordering Process About Menu Prices and the Costs of Delivery.**

71.    By combining the "Convenience Fee" and "Service Fee" with tax payments in a generic heading of "Taxes and Fees," Defendant misleads the consumer into believing that these taxes and fees are government-imposed charges.

72.    Given that the vast majority of American consumers already expect to pay sales tax on their purchase, Defendants purposefully hide these charges behind a link among state taxes where it is unlikely to be discovered by reasonable consumers.

73.    Customers including the named and Proposed Class Plaintiffs reasonably rely on and reasonably expect to be charged and to pay the proper amount of taxes and fees.

74.    The line-item "Taxes and Fees" in Figure 1 makes Defendants' customers, including the named and Proposed Class Plaintiffs, reasonably believe and rely on such amount as the total of government-imposed charges.

75.    "Taxes and Fees" makes Defendants' customers, including the named and Proposed Class Plaintiffs, reasonably believe and rely that Defendants are endeavoring for the benefit of the consumer to calculate the applicable government tax rates and had "done the math" for the customer correctly.  Defendants had not.

76.    All GoTo System apps and websites hide the breakdown of Tax, Service Fee, and/or Convenience Fee behind a small icon near the line item "Taxes and Fees".

77.    For all GoTo Brands' apps and websites, GoTo's System displays identical or substantially identical line items and icons at the checkout screen.

78.    For delivery orders, Defendants' System on the ordering screen (FIGURE 1) displays Subtotal, a flat "Delivery Charge", a line item "Taxes and Fees", Total, and a small icon:

| | |
|---|---:|
| Subtotal | $47.21 |
| Delivery Charge | $3.99 |
| Taxes and Fees ⓘ | $9.54 |
| **Total** | **$60.74** |

**FIGURE 1**

79.    All GoTo System apps and websites require user interaction with a small icon in order to open a new window to display the breakdown of "Taxes and Fees".  Only if a user clicks on this small icon does an additional window appear (FIGURE 2) containing three (3) line items: "Tax", "Convenience Fee", and "Service Fee".



**FIGURE 2**

80.     A person can submit their order without ever having seen that the amount listed as a "Taxes and Fees" are not truly government mandated monies, but a bundling of taxes and Defendants' hidden "Service Fee" and "Convenience Fee."

81.     The purchase flow process depicted above remain s substantially the same regardless of whether a consumer purchases food for delivery via any GoTo Brands' website or smartphone app, and regardless of whether the consumer signs up for the GoTo Brands' reward's program and logs in.  GoTo Brands' websites and apps always shows them a "Taxes and Fees" figure on the Checkout and Payment screen which hides within it a 3% "Service Fee and a 10% "Convenience Fee".

82.     In 2013, the Federal Trade Commission ("FTC") noted that the failure to disclose fees early in the purchase process, such as Defendants' "Service Fee" and "Convenience Fee," is likely to mislead the public: The FTC recognizes that additional fees should be disclosed before the customer "add[s] to shopping cart" and provides credit card information. The FTC also recognizes that where "a product's basic cost (e.g. the cost of the item before taxes, shipping and handling, and any other fees are added on) is advertised on one page," but the seller also intends to add "significant additional fees" on top of the basic cost, the public is likely to be misled. "[T]he existence and nature of those additional fees [should be] disclosed on the same page [as the advertised price] and immediately adjacent to the

cost claim, and with appropriate prominence." Integral Disclosures should not be communicated through a hyperlink. *.com Disclosures, How to Make Effective Disclosures in Digital Advertising*, Federal Trade Commission (March 2013)[18]

### (1) "Service Fee"

83.    Defendants add to every Digital to-go order placed through app or website, whether for pickup or delivery, a "Service Fee" in the amount of 3% of the total food cost.

84.    However, Defendants also apply the "Service Fee" to telephone orders for pickup or delivery. This fee is therefore by definition simply an additional menu charge. Consumers are deceived and misled into paying more than the prices that are advertised.

85.    The named and Proposed Class Plaintiffs reasonably relied on Defendants posted retail prices in making their purchase decisions, when in reality the price of the products was uniformly 3% higher than the advertised price due to the automatic Service Fee imposed.

### (2) "Convenience Fee"

---

[18] https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf (last accessed September 1, 2025).

86.     Defendants apply a "Convenience Fee" in the amount of 10% of the subtotal to all GoTo System orders for delivery, effectively raising its prices by 10% on delivery orders.

87.     Defendants do not apply the "Convenience Fee" to Digital Orders for Pickup.

88.     The "Convenience Fee" is exclusively applied by Defendants to Delivery orders and is therefore by definition an additional hidden delivery charge, effectively requiring consumers to pay twice for the same service.

89.     Defendants hide the "Convenience Fee" altogether from the ordering screen while prominently displaying a sum certain as a "Delivery Charge".

90.     Consumers like the named and Proposed Class Plaintiffs reasonably understand Defendants' express "Delivery Charge" to disclose the total additional cost they will pay as a result of having their food delivered, as opposed to picking up their food or ordering food in person.

91.     This renders false Defendants' promise of flat-fee delivery, which is made repeatedly in the app and the website, and then again in the "Delivery Charge" line item on the order screen.

92.     In short, the "Delivery Charge" is not actually "$3.99". The actual "Delivery Charge"—the extra cost for having food delivered as opposed to picking

it up—is the listed "Delivery Charge" *plus* the hidden "Convenience Fee" markup applied only to Delivery orders.

93.    This "Convenience Fee" is entirely duplicative of the "Delivery Charge" Defendants disclose to consumers prior to purchase.  Additionally, all or part of the Convenience Fee did not go to the cost of delivery; it was simply a means of additional revenue by Defendants.  The Service Fees were menu price hikes and a source of additional revenue by Defendants.  These hidden markups were specifically designed for profit.

94.    Defendants' practice of touting the "Delivery Charge" while hiding the Convenience Fee, and Defendants' attempts to avoid displaying all the fees and their purpose at once, is a deceptive and unfair practice and results in the customer double-charged for the same service.

95.    Defendants were or should have been aware that consumers were and would be deceived by hidden fees and by the description of those fees. Nonetheless, Defendants never informed its customers of the true nature of the additional fees.

96.    Defendants intended for consumers to make more purchases because of their advertisements of flat-fee delivery, only to raise prices on all delivery orders by 10% at checkout.

97.    Defendants intended for consumers to make more digital purchases because of their advertised app and website menu prices, only to raise prices on all digital orders by 3% at checkout.

98.    Under Georgia law, one who supplies information during the course of his or her business owes an independent duty of reasonable care to parties who rely on that information and use the information as the supplier intended.

99.    Defendants, in promoting and marketing food delivery to consumers, had a duty of care to inform customers of the true costs of their food and the true costs of ordering food delivery. These material facts were only known by Defendants and never disclosed to consumers.

### G. Defendants' Apps and Websites Fail to Bind Users to Any Terms of Service.

100.    When a consumer downloads a GoTo Brands restaurant app or uses a GoTo Brands restaurant website (including McAlister's), he or she can choose to place an order without creating an account.

101.    In placing an order, with or without an account, one enters in a name and contact information.  Users are not required to affirmatively consent to terms of usage or service, such as by clicking a check box.

102.    Defendants' System displays and utilizes identical or materially identical ordering screens and ordering processes across its Brands apps and

websites. There is no variance in the GoTo Brands websites and apps in the ordering process.

103.    All GoTo System apps and websites impose a Service Fee of 3% to all Digital orders and a Convenience Fee of 10% to all Delivery orders.

104.    At all times, GoTo required all its Brands restaurants to utilize the GoTo System and charged the Convenience Fee and Service Fee in the apps and websites of all GoTo Brands.

105.    At all times, GoTo structured the ordering process implemented, as evidenced by its design and operation of the GoTo System apps and websites across Brands.

106.    All GoTo Brands apps and websites have identical or substantially identical defects in the ordering experience and process at issue with the GoTo System.

107.    Defendants engaged in a common practice of charging and accepting amounts not permitted as to the named and Proposed Class Plaintiffs.

108.    All GoTo Brands apps and websites concealed the same intrinsic quality of its products and services with the GoTo System that Plaintiffs and consumers generally could not have discovered in the exercise of reasonable care.

109.    The named Plaintiffs have suffered the same injury as other Proposed Class plaintiffs as they were injured by identical or substantially identical defects and conduct.

110.    Defendants' business operations are standardized are the same to all members of the putative class.

111.    Defendants' conduct of overcharging its customers has occurred during the Relevant Period in all GoTo System Brands, including McAlister's, nationwide.

**H.    Plaintiff Buitron's Experience**

112.    On December 8, 2023, Plaintiff Matthew Buitron, an Alabama resident, ordered food through the McAlister's app, operated by Defendant GoTo, for delivery from a McAlister's Deli located in Homewood, Alabama, in the total amount of $31.14.

113.    Prior to placing his order, a line item titled "Delivery Charge" and a line item titled "Taxes and Fees" was displayed to Plaintiff Buitron.

114.    In placing his order, Plaintiff Buitron relied on displayed menu prices as the cost of food, the displayed $3.99 flat-fee delivery charge as the cost of delivery, and the displayed line item titled "Taxes and Fees" as Defendants' calculation of government-imposed monies.

115.    As part of that purchase, and without his knowledge, Plaintiff Buitron was charged, in addition to the "Delivery Charge" a $0.57 "Service Fee" constituting

3% of the subtotal, that in fact represented an additional cost of food and a profit component, and a $2.07 "Convenience Fee", constituting 10% of the subtotal, that in fact represented an additional cost of delivery and a profit component.

116.    At no time prior to his purchase was Plaintiff Buitron made aware that the 3% "Service Fee" or the 10% "Convenience Fee" would be added to his purchase, or that the cost of Delivery was not limited to $3.99.

117.    Accordingly, at no time prior to his purchase did Plaintiff Buitron realize that Defendants would furtively affix a price increase on his transaction.

118.    Had he known the actual menu prices were not as listed, or that the cost of delivery was not in fact $3.99, Plaintiff Buitron would have chosen another method of getting his food from McAlister's, like ordering in person, or would not have ordered food from McAlister's.

119.    Had he known that the "Service Fee" or the "Convenience Fee" would be charged on his purchase, Plaintiff Buitron would have chosen another method of getting his food from McAlister's, like ordering in person, or would not have ordered food from McAlister's.

## I.    Plaintiff Butler's Experience

120.    On May 23, 2024, Plaintiff Donald Butler, a Georgia resident, ordered food through the McAlister's app, operated by Defendant GoTo, for pickup from a McAlister's Deli located in Niceville, Florida, in the total amount of $34.60.

121.    Prior to placing his order, a line item titled "Taxes and Fees" was displayed to Plaintiff Butler.

122.    In placing his order, Plaintiff Butler relied on displayed menu prices as the cost of food and the displayed line item titled "Taxes and Fees" as Defendants' calculation of government-imposed monies.

123.    As part of that purchase, and without his knowledge, Plaintiff Butler was charged a $0.94 "Service Fee" constituting 3% of the subtotal, that in fact represented an additional cost of food and a profit component.

124.    At no time prior to his purchase was Plaintiff Butler made aware that the 3% "Service Fee" would be added to his purchase.

125.    Accordingly, at no time prior to his purchase did Plaintiff Butler realize that Defendants would furtively affix a price increase on his transaction.

126.    Had he known the actual menu prices were not as listed, Plaintiff Butler would have chosen another method of getting his food from McAlister's, like ordering in person, or would not have ordered food from McAlister's.

127.    Had he known that the "Service Fee" would be assessed on his purchase, Plaintiff Butler would have chosen another method of getting his food from McAlister's, like ordering in person, or would not have ordered food from McAlister's.

## CLASS ACTION ALLEGATIONS

128.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of themselves, and Classes of similarly situated persons defined as follows:

**Service Fee Class**:  All persons in the United States who made an order through a GoTo System app or website, within the statutes of limitation for each cause of action alleged and until the date notice is disseminated, and who were charged a "Service Fee."

**Convenience Fee Class**: All persons in the United States who made an order through a GoTo System app or website, within the statutes of limitation for each cause of action alleged and until the date notice is disseminated, and who were charged a "Convenience Fee."

129.    Excluded from the Classes are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

130.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide

basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

131.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Fed. R. Civ. P. 23.

132.    **Numerosity**: At this time, Plaintiffs do not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiffs believe that the Class members are well into the hundreds of thousands and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendants.

133.    **Commonality and Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a.    Whether Defendants' practices and conduct in charging Service Fees and Convenience Fees are false, deceptive, misleading, unfair and/or unlawful;

b.    Whether Defendants' conduct violates the Georgia's Fair Business Practices Act and Georgia common law;

c.    Whether Defendants should be enjoined (temporarily and permanently) from selling products with menu prices that are false, misleading and deceptive;

d.      Whether Defendants should be enjoined (temporarily and permanently) from charging consumers anything but the lowest offered prices on its menus.

e.      Whether Defendants are required to modify their databases and digital ordering Systems and implement controls to ensure that menu prices are accurately displayed;

f.      Whether Defendants are required to modify its databases and digital ordering Systems and implement controls to ensure fees are correctly applied and charged;

g.      Whether Plaintiffs and the Class members sustained actual damages; and

h.      Whether during the Relevant Period, Defendants deceptively and/or negligently concealed fees on orders placed through the Defendants' websites and mobile apps.

i.      Whether during the Relevant Period, Defendants deceptively and/or negligently concealed menu prices and fees on orders placed through the Defendants' websites and mobile apps.

j.      Whether Defendants engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

k.      Whether Plaintiffs and the Classes have been damaged, and if so, the proper measure of damages; and

l.      Whether an injunction is necessary to prevent Defendants from continuing to deceptively conceal the menu prices and/or amount of delivery costs and other fees on orders placed through Defendants' websites and mobile apps.

134.    **Typicality**: Like Plaintiffs, many other consumers ordered food from McAlister's and other GoTo Brands, believing Defendants' menu prices and listed delivery costs to be accurate. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and each Class member were injured by Defendants' deceptive practices, negligence and fraudulent concealment about the true nature of the menu prices and the cost of delivery.  Plaintiffs and the Class have suffered the same or similar injury as a result of Defendants' false, deceptive and misleading practices and omissions. Plaintiffs' claims and the claims of members of the Class emanate from the same legal theory, Plaintiffs' claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

135.    **Adequacy of Representation**: Plaintiffs are committed to pursuing this action and have retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiffs will fairly and adequately represent the interests of the Classes and do not have any interests adverse to those of the Classes.

136.    **Predominance:** The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the

controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

137.    Plaintiffs bring this action on behalf of nationwide classes as: (a) the allegations of violation of the GFBPA, negligence per se, negligent misrepresentation, and fraudulent omission against Defendants satisfy the elements of Georgia law and (b) applying Georgia law to the Proposed Classes, to Defendants, and to the claims herein is appropriate given the allegations in this complaint and applicability under Georgia law.

138.    Plaintiffs and members of the Classes seek all available remedies, damages, and awards as a result of Defendants' conduct.

## <u>COUNT I</u>
## VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
### (O.C.G.A. 10-1-390, *et. seq.*)

139.    Plaintiffs re-allege and incorporate by reference Paragraphs 1-148 above as if fully set forth herein.

140.    The Georgia Fair Business Practices Act ("GFBPA") forbids and declares unlawful any unfair or deceptive acts or practices in the conduct of

consumer transactions and consumer acts or practices in trade or commerce. O.C.G.A. § 10-1-393(a).

141. The named and proposed class Plaintiffs are "consumers" within the meaning of O.C.G.A. 10-1-390, *et seq.*

142. The named and proposed class Plaintiffs are "persons" within the meaning of O.C.G.A. 10-1-390, *et seq.*

143. Defendants' food products and related services are "goods" or "services" within the meaning of O.C.G.A. 10-1-390, *et seq.*

144. Defendants' interactions with the named and proposed class Plaintiffs were acts in the conduct of consumer transactions and consumer acts or practices in trade or commerce within the meaning of O.C.G.A. 10-1-390, *et seq.*

145. Defendants had notice of what conduct violates the GFBPA because the GFBPA defines what conduct is prohibited.

146. The GFBPA declares several specific actions to be unlawful, including: O.C.G.A. §10-1-393(b)(5), "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," O.C.G.A. §10-1-393(b)(7), "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and O.C.G.A. §10-1-393(b)(9), "Advertising goods or services with intent not to sell them as advertised."

147.    The GFBPA further mandates: "It shall be unlawful for any person who is engaged in any activity involving or using a computer or computer network to: (1) Employ any device, scheme, or artifice to defraud a person, organization, or entity or (2) Engage in any act, practice, or course of business that operates or would operate as a fraud or deceit upon a person, organization, or entity." Ga. Code Ann. § 10-1-393.5(b)

148.    The named and proposed class Plaintiffs, and reasonable consumers in the same circumstances, interpreted "taxes and fees" as charges mandated by, and forwarded to, the state.

149.    The named and proposed class Plaintiffs, and reasonable consumers in the same circumstances, justifiably and reasonably relied to their detriment on the information provided and supplied by Defendants.

150.    Defendants chose the descriptive terms, and those terms do not accurately describe what is being charged and collected. This practice was likely to deceive a consumer acting reasonably in the same circumstances.

151.    Defendants committed deceptive acts and practices in violation of the GFBPA by affirmatively and knowingly representing on their websites and mobile apps that they provide certain menu prices and flat-fee delivery for food orders, when, in reality, they hide more food costs and delivery charges under "Taxes and Fees" in

a "Convenience Fee" applied exclusively to delivery orders and a "Service Fee" applied to all website and app orders.

152.    These additional charges were defects known to Defendants, but Defendants withheld this information while marketing its menu prices and flat-fee delivery charges.

153.    Defendants' deceptive practice is hiding fees and price inflation through a hidden, uniform 10% price increase on delivery orders, and a hidden, uniform 3% price increase on all app and website orders.

154.    Defendants' actions regarding their digital order and delivery services, as described herein, are deceptive acts or practices in the conduct of business trade or commerce of food and in the furnishing of food delivery services.

155.    Defendants' misleading and deceptive conduct occurred, and continues to occur, in the course of Defendants' business.  Defendants intentionally violate the GFBPA because they know of the culpable nature of their acts.

156.    Defendants' conduct, as described herein, is a practice that is likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment.

157.    The named and proposed class Plaintiffs acting reasonably under the circumstances, were in fact misled.

158.    As a direct and proximate result of Defendants' violations of the GFBPA, the named and proposed class Plaintiffs were injured and suffered actual damages.

159.    Defendants intentionally and knowingly created a deceitful sales process that was likely to deceive reasonable customers into making purchases they would not have otherwise made, had they known the truth.  All of this deception would be material to a reasonable consumer.

160.    By failing to disclose the "Service Fee" and "Convenience Fee" and engaging in the uniform conduct described herein, Defendants engaged in deceptive business practices prohibited by the GFBPA, including representing that products or services have characteristics, uses, benefits, and qualities which they do not have; representing that products or services are of a particular standard, quality, and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce.

161.    In the course of Defendants' business, it willfully failed to disclose and actively concealed its "Service Fee" and "Convenience Fee" as alleged herein. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including named and proposed class Plaintiffs.

162.    Defendants knew or should have known that their conduct violated the GFBPA.

163.    The named and proposed class Plaintiffs suffered ascertainable loss caused by Defendants' deceptive practices and concealment.

164.    As a direct and proximate result of Defendants' conduct and violations of the GFBPA, the named and proposed Class Plaintiffs have suffered injury-in-fact and actual damages.

165.    Defendants are liable to the named and proposed class Plaintiffs for damages in amounts to be proven at trial.

166.    Plaintiffs Buitron, and Butler each made the required written pre-suit demand to Defendants under O.C.G.A. § 10-1-399(b).

167.    Pursuant to O.C.G.A. 10-1-390, *et seq*., Plaintiffs, in their individual and representative capacities, seek monetary relief against Defendants, including treble damages, exemplary damages, penalties, interest, and costs.

168.    Plaintiffs, in their individual and representative capacities, also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under O.C.G.A. 10-1-390, *et seq*.

## COUNT II
## NEGLIGENCE PER SE

169.    Plaintiffs re-allege and incorporate by reference Paragraphs 1-148 above as if fully set forth herein.

170.    Defendant committed negligence per se by violating requirements set forth in Section 5 of the Federal Trade Commission Act ("FTCA", 15 U.S.C. § 45), and O.C.G.A. § 10-1-393, O.C.G.A. § 10-1-393.5, O.C.G.A. § 10-1-420, and O.C.G.A. § 10-1-421.

171.    The named and proposed class Plaintiffs fall within the class of persons these statutes were intended to protect.  The harm suffered by the named and proposed class Plaintiffs was the same harm the statutes were intended to guard against.

172.    O.C.G.A. § 10-1-393(a) prohibits "unfair or deceptive acts or practices in the conduct of consumer transactions."

173.    The Georgia FBPA declares several specific actions to be unlawful, including: "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have." O.C.G.A. §10-1-393(b)(5); "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." O.C.G.A. §10-1-393(b)(7); and "Advertising goods or services with intent not to sell them as advertised." O.C.G.A. §10-1-393(b)(9).

174.    Pursuant to Georgia Code § 10-1-393.5(b), "It is unlawful for any person who is engaged in any activity involving or using a computer or computer network to: (1) Employ any device, scheme, or artifice to defraud a person,

organization, or entity or (2) Engage in any act, practice, or course of business that operates or would operate as a fraud or deceit upon a person, organization, or entity." Ga. Code Ann. § 10-1-393.5(b).

175.    Pursuant to Georgia Code § 10-1-420, "Advertising without intending to sell on stated terms", "(a) No person, firm, or corporation shall offer for sale merchandise, commodities, or services...or advertise merchandise, commodities, or services with intent, design, or purpose not to sell the merchandise, commodities, or services so advertised or offered for sale at the price or upon the terms stated therein or otherwise communicated, or with intent not to sell the merchandise, commodities, or services so advertised."

176.    Georgia Code § § 10-1-421 further prohibits "false or fraudulent statements in advertising."

177.    It is an unfair or deceptive practice in violation of 15 USCS § 45 to make any false representation as to price of goods if representation has capacity or tendency to deceive or mislead purchaser in making his decision whether to buy.

178.    Defendants used computers and computer networks to employ their devices, in their scheme to defraud, and to engage in the acts and practices herein.

179.    Defendants advertise menu prices and flat-fee delivery with no intent to sell at the prices or terms advertised.  Defendants made false or fraudulent statements in advertising.  Defendants employed deceptive devices and practices in

violation of the FTCA and the GFBPA. These devices and practices had the capacity to deceive or mislead reasonable purchasers like Plaintiff and the proposed Classes, and did in fact mislead named and proposed class Plaintiffs. Defendants conduct violated the statutes listed herein.

180. Defendants supplied information during the course of their business and owed a duty to the named and proposed class Plaintiffs, who relied on that information and used the information as Defendants intended.

181. In supplying information on the prices of its products and costs of its services to the named and proposed class Plaintiffs, Defendants owed a duty to prepare and disclose the information with reasonable care pursuant to the laws and regulations listed herein.

182. As a direct and proximate result of Defendants' conduct and violations of the FTCA, of the GFBPA, and other state and federal regulations, the named and proposed class Plaintiffs have suffered injury-in-fact and actual damages, and they seek in their individual and representative capacities all available relief against Defendants.

## COUNT III
## NEGLIGENCE

183. Plaintiffs re-allege and incorporate by reference Paragraphs 1-193 above as if fully set forth herein.

184.    Defendants further owed a duty of reasonable care to supply accurate information, to supply information that was not deceptive to a reasonable consumer, and/or to supply information in such a way that would not cause foreseeable risk of harm to the named and proposed class Plaintiffs,

185.    In supplying information to customers including the named and proposed class Plaintiffs in the form of advertised menu prices and "Delivery Charge" as flat-fee cost of delivery, Defendants had a duty to prepare information with care and to inform customers of the true costs of menu prices and delivery.

186.    Once they endeavored to calculate for Plaintiffs' benefit the amount of "Taxes and Fees", Defendants had a duty to prepare that information with reasonable care, including the correct, proper amount of government-imposed taxes and fees versus additional menu fees and delivery costs.

187.    Defendants breached their duty by preparing without reasonable care the information given to the Plaintiffs, and by charging the Plaintiffs more than the listed menu prices and delivery costs, and by and failing to provide accurate, non-deceptive information.

188.    Defendants knew or should have known their website/app marketing about menu prices and delivery costs are material to the reasonable consumer and likely to deceive.

189.    Defendants knew and intended that Plaintiffs and members of the Classes would rely upon their website/app marketing when deciding whether to order food for pickup or delivery from Defendant.

190.    Defendants knew or should have known that its apps and websites showing the cost of its food and the cost of delivery are inaccurate and misleading.

191.    The named and Proposed Class Plaintiffs justifiably and reasonably relied to their detriment on the information provided and supplied by Defendants. As a direct and proximate result of Defendants' negligent conduct, Plaintiffs have suffered injury-in-fact and actual damages. The named and proposed class Plaintiffs have suffered injury-in-fact and actual damages, and they seek in their individual and representative capacities all available relief against Defendants.

## COUNT IV
## UNJUST ENRICHMENT

192.    Plaintiffs re-allege and incorporate by reference Paragraphs 1-148 above as if fully set forth herein.

193.    Defendants induced or encouraged the named and Proposed Class Plaintiffs to provide something of value to Defendants.

194.    The named and Proposed Class Plaintiffs conferred a benefit on Defendants when they paid Defendants and Defendants knew of the benefit being bestowed upon it and either affirmatively chose to accept the benefit or failed to reject it.

195.    To the detriment of named and Proposed Class Plaintiffs, Defendants have been, and continue to be, unjustly enriched as a result of the wrongful conduct alleged herein.

196.    Defendants unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits and have collected monies that are not due and owing under applicable law, which, under the circumstances, would be unjust to allow Defendants to retain.

197.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

198.    Defendants engaged in a common practice of charging and accepting amounts not permitted as to the named and Proposed Class Plaintiffs.  Plaintiff and class members have suffered loss by virtue of Defendants' conduct and are entitled to relief for unjust enrichment.

199.    Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendants as a result of its inequitable conduct as more fully stated herein.

## <u>COUNT V</u>
## FRAUDULENT OMISSION / CONCEALMENT

200.    Plaintiffs re-allege and incorporates by reference Paragraphs 1-148 above as if fully set forth herein.

201.    Defendants omitted the material fact that as a matter of policy on all digital orders, menu prices were *de facto* higher than advertised, and on all delivery orders, menu prices were *de facto* higher, and charges were added over and above those represented for delivery.

202.    Defendants had a duty to disclose these material facts.

203.    Defendants intended to induce reliance and/or defraud customers when concealing these material facts.

204.    The named Plaintiffs and members of the proposed Classes justifiably and reasonably acted in reliance on Defendants' deceptive practices and omissions by placing orders for pickup and delivery at the listed menu prices and listed delivery fee.

205.    The Named Plaintiffs and any reasonable consumer would not have used the GoTo System to place an order for pickup or delivery if they had known of the true cost.

206.    As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Proposed Classes were induced into using the delivery service and have been harmed and suffered actual damages in the amount of delivery costs paid in excess of those advertised.

207.    As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Proposed Classes were induced into ordering food and have been

harmed and suffered actual damages in the amount paid in excess of menu prices advertised.

**COUNT VI**

**FALSE ADVERTISING IN VIOLATION OF**
**GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**GA. CODE ANN. § 10-1-370, et seq.**

208.    Plaintiffs re-allege and incorporate by reference Paragraphs 1-148 above as if fully set forth herein.

209.    Based on the conduct described, supra, Defendants are engaged in deceptive trade practices in violation of GA. CODE ANN. § 10-1-372(a) by passing off goods or services as those of another, causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another, using deceptive representations or designations of geographic origin in connection with goods or services, representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have, representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another, disparaging the goods, services, or business of another by false or misleading

representation of fact, advertising goods or services with intent not to sell them as advertised, and engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding.

210.    Defendants, Plaintiffs, and the class members are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

211.    As set out above, Plaintiffs, and the proposed class members have been and/or are likely to be damaged as a proximate result of Defendants' deceptive and unfair trade practices, in the form of economic injury, as they will continue to be food customers in the marketplace.

212.    Plaintiffs and the proposed class members seek an order enjoining Defendants' deceptive trade practices, an award of costs and attorneys' fees, and any other just and proper relief available under GA. CODE ANN. § 10-1-373.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this case be certified and maintained as a class action and for a judgment to be entered upon Defendants as follows:

A.    certify the class and subclass as proposed herein, designating Plaintiff as class and subclass representative, and appointing undersigned counsel as Class Counsel;

B.    award economic and compensatory damages on behalf of Plaintiff and all class and subclass members;

C.    award all actual, general, exemplary, special, incidental, punitive, and consequential damages, including Defendant's profits, to which Plaintiff and class and subclass members are entitled;

D.    award treble damages pursuant to law, and all other actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff, class, and subclass members are entitled;

E.    order injunctive relief, compelling Defendant to cease its unlawful actions;

F.     award reasonable attorneys' fees, reimbursement of all costs for the prosecution of this action, and pre-judgment and post-judgment interest; and

G.    grant such other and further relief this Court deems just and appropriate.

## <u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiffs on their own behalf and on behalf of all others similarly situated, demand a jury trial on all claims so triable.

Dated: December 8, 2025

*/s/* Patrick Marshall
Patrick Marshall
Georgia Bar No.: 297391
**Patrick Marshall Law, LLC**
2025 3rd Avenue N Suite 325
Birmingham, AL 35203-3372
Phone: (843) 513-5118
Email: pmarshall@patrickmarshalllaw.com

/s/Trey J. Malbrough (pro hac vice forthcoming)
Trey J. Malbrough
**The Malbrough Firm LLC**
Age Herald Building
2107 Fifth Avenue North, Suite 301
Birmingham, Alabama 35203
Tel: (205) 701-0707
Email: trey@tmbfirm.com

*Attorneys for Plaintiffs and the Proposed Class*


**DEFENDANTS TO BE SERVED VIA THEIR REGISTERED AGENTS:**

GoTo Foods Holdings Inc.
c/o Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA, 30092

GoTo Foods LLC
c/o Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA, 30092

McAlister's Franchisor SPV LLC
c/o Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA, 30092